J-S56032-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN THE INTEREST OF: K.R.L., JR., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: J.T.P., MOTHER | No. 867 EDA 2017 |

Appeal from the Decree February 13, 2017
in the Court of Common Pleas of Philadelphia County
Family Court at No.: CP-51-AP-0000860-2016

BEFORE: BOWES, J., STABILE, J., and PLATT, J.*

MEMORANDUM BY PLATT, J.:                    **FILED NOVEMBER 15, 2017**

J.T.P. (Mother), appeals from the decree of the Court of Common Pleas of Philadelphia County (trial court) entered February 13, 2017, that granted the petition to involuntarily terminate her parental rights to her son, K.R.L., Jr. (Child) (born 9/12).  We affirm.[1]

Child entered foster care pursuant to an order of protective custody (OPC) obtained by Philadelphia's Department of Human Services (DHS) on August 8, 2014.  DHS acted after Child's paternal grandmother sent DHS a

---

* Retired Senior Judge assigned to the Superior Court.

[1] The trial court also terminated the parental rights of Child's father, N.L. (Father).  Father did not appeal that termination.

picture she received from Mother showing Child with a plastic trash bag around his head. (*See* N.T. Hearing, 2/13/17, at 17-18).

Child was not to have been in Mother's care because Child's two siblings had been removed from her care. They were removed when she was found to be the indicated perpetrator of abuse against Child's sibling when she burned the child's arm by holding it over a burner on a stove and punching him in the eye and leg. (*See id.* at 20-21, 43; DHS Exhibit 9, Report of Forensic Evaluation, 6/08/15, at 1). The trial court ultimately terminated Mother's parental rights to that child and another of Child's siblings. (*See* N.T. Hearing, 2/13/17, at 21).

Child had been living with Father, who was aware he was to keep Child away from Mother. According to Father, he returned Child to Mother's care because he was unable to provide for Child. (*See id.* at 20-23).

The trial court adjudicated Child dependent on August 19, 2014, and committed him to DHS.

After submitting to a psychiatric evaluation through Behavioral Health Services (BHS) and an evaluation at the Clinical Evaluation Unit, Mother was to have supervised visits with Child at the discretion of Child's therapist. (*See id.* at 24; DHS Exhibit 7, at 14-15, Order of Adjudication and Disposition, 8/19/14). As a result of his experiences while in Mother's care, Child was found to suffer from post-traumatic stress disorder and required therapy and medication management. (*See* N.T. Hearing, 10/19/16, at 49).

At a family service plan meeting, Mother's objectives were determined to be: 1) comply with the court-ordered BHS evaluation and participate in mental health treatment; 2) participate in parenting training; 3) submit to a parenting capacity evaluation (PCE) as court-ordered; and 4) obtain stable housing.

Mother had disclosed a history of mental health issues. That, and the fact that she seriously physically abused Child's siblings as well as her irate behavior in her contact with DHS, raised serious concerns about Mother's mental health. (*See* N.T. Hearing, 2/13/17, at 25-27).

On January 26, 2015, the trial court found aggravated circumstance existed as to Mother as a result of her victimization of Child's siblings. The trial court also found that DHS had no requirement to provide reasonable efforts to reunify Child with Mother. (*See* DHS Exhibit 7, at 18, Aggravated Circumstances Order, 1/26/15).

The trial court order notwithstanding, DHS continued to provide Mother with specific permanency objectives and referrals. Mother, however, failed to follow through with a number of those objectives. She failed to go to BHS to obtain services specified in her PCE and failed to obtain housing, remaining transient and without the financial means to care for Child. Mother also gave birth to another child who tested positive for marijuana. (*See* N.T. Hearing, 2/13/17, at 27-30, 66-67).

On June 8, 2015, Dr. Erica Williams, a psychologist, conducted a PCE of Mother to assess her ability to provide safety and permanency for Child. Dr. Williams found Mother lacked that ability. (*See id.* at 64-65). Mother denied any responsibility for the removal of her children from her care, placing all the blame on others. (*See id.* at 65-67). Dr. Williams found Mother to "present[] with poor insight and judgment, with thoughts consistent with grandiose delusions, and an altered perception of reality." (DHS Exhibit 9, at 8). Mother's primary diagnosis was unspecific schizophrenia spectrum and other psychotic disorder. (*See id.*). Dr. Williams recommended Mother engage in individual therapy focused*, inter alia*, on reality testing; identification of her role in the other children's removal; addressing her substance abuse; developing healthy coping and relationships skills; participating in a psychiatric evaluation for medication needs; obtaining and maintaining appropriate housing and a sustainable financial plan; and participating in parenting classes focused on children with behavioral needs. (*See id.* at 8-9).

On September 19, 2016, when it became clear that Mother failed to address and resolve her presenting issues, DHS filed petitions to involuntarily terminate Mother and Father's parental rights to Child and to change Child's goal to adoption. The trial court held hearings on the petitions on October 19, 2016, and February 13, 2017. DHS presented the testimony of DHS social worker, Fredina Parker; Children's Crisis Treatment Center (CCTC) trauma

therapist, Alyssa Bruno; Village case manager, Fred Hayward; and psychologist, Dr. Erica Williams. Mother was present but did not testify or present any evidence on her behalf. (*See* N.T. Hearing, 2/13/17, at 70).

Dr. Williams testified that Mother did not take responsibility for her role in her children's trauma and removal. (*See id.* at 66-67). Ms. Parker testified that Mother denied abusing Child's siblings and contended Child's paternal grandmother had a vendetta against her. This vendetta allegedly resulted in the disclosure of Child's picture with a plastic bag wrapped around his head. (*See id.* at 28). Ms. Parker stated that Mother denied and lacked an understanding of Child's documented developmental delays, special needs and mental health concerns. (*See id.* at 30-32). According to Ms. Parker, Child is believed to be on the autism spectrum. (*See id.* at 31). The trial court had to intervene when Mother failed to sign authorizations for Child to receive needed treatment. (*See id.* at 32).

In October of 2015, Child was referred to the CCTC trauma treatment program as a result of Mother's securely fastening a plastic bag over Child's head and suspected concerns that Child had witnessed the physical abuse of his siblings and was, in general, neglected. (*See* N.T. Hearing, 10/19/16, at 11, 18-20, 29). Child presented with symptoms consistent with being subject to physical abuse or witnessing violence. (*See id.* at 20). At three years of age, Child was very aggressive, destructive, and defiant. Child was kicking his then-foster parent's cat and escaping from the home. Child was also

significantly delayed in his speech, learning, and motor skills requiring services at Elwyn Institute. (*See id.* at 13, 20-21, 49).

According to Ms. Bruno, Mother lacked an understanding of Child's needs and failed to attend caretaker sessions as required by CCTC. (*See id.* at 42-43). Mother only attended two caretaker sessions, one in December of 2015 and one in March of 2016. Caretaker sessions are necessary to receive training on childhood trauma, its effects, and how to respond to it. (*See id.* at 23, 25, 27). At the sessions, Mother denied that Child had been traumatized, and denied any role in or responsibility for his trauma or that of his siblings. (*See id.* at 26-28).

Ms. Bruno related that Mother insisted that Child had placed the plastic bag over his own head and that she was so disturbed that she sent the picture to Father. (*See id.* at 26, 29). According to Ms. Bruno, Mother blamed the system and other persons for her children's circumstances and claimed that Child was traumatized because he was out of her care. (*See id.* at 29-31). Mother denied that Child was developmentally delayed. (*See id.* at 26-27). Other than one additional phone call, Mother never made contact with Child's therapist, Ms. Bruno, again. (*See id.* at 31). Ms. Bruno worried about Child's safety if he were in contact with Mother. (*See id.* at 42).

Ms. Bruno opined that Child requires a safe and stable environment with a supportive caregiver able to validate his trauma and appropriately respond to his trauma-related symptoms. (*See id.* at 21-22, 40). The evidence

established Child's current pre-adoptive foster parent is that person. She participates in every trauma session with Child. (*See id.* at 22). Child has improved in her care, is more manageable, has been toilet trained, sleeps better and is talking much more since his placement with her. The foster parent is very patient with Child, and Child responds well to her. (*See id.* at 40; N.T. Hearing, 2/13/17, at 45).

Ms. Parker and Mr. Hayward opined that Mother cannot appropriately care for Child and that termination of her parental rights and the goal of adoption is in Child's best interests. (*See* N.T. Hearing, 2/13/17, at 32-33, 59). Mother has had no contact with Child since he entered foster care, and they do not share a parent-child bond. (*See id.* at 30). Child shares a bond with his pre-adoptive foster mother, whom he refers to as mom. Child has made significant behavioral improvement in his foster mother's home and he views her as his primary caregiver. Her home is "the best fit for him." (*Id.* at 41; *see id.* at 39-42, 57).

The trial court entered its decree terminating Mother's parental rights to Child pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), (8), and (b), and changing the Child's goal to adoption on February 13, 2017. Mother filed her notice of appeal and statement of errors complained of on appeal to the termination of her rights on March 8, 2017. *See* Pa.R.A.P. 1925(a)(2)(i). The trial court filed an opinion on April 20, 2017. *See* Pa.R.A.P. 1925(a)(2)(ii).

Mother raises the following questions on appeal:

1. Whether the [t]rial [c]ourt erred in [t]erminating [Mother's] [p]arental [r]ights under 23 Pa.C.S.A. section 2511(a)(1), the evidence having been insufficient to establish Mother had evidenced a settled purpose of reli[n]quishing [her] parental claim, or having refused or failed to perform [her] parental duties[?]

2. Whether the [t]rial [c]ourt erred in [t]erminating [Mother's] [p]arental [r]ights under 23 Pa.C.S.A. sections 2511 (a)(2), (a)(5), and (a)(8), the evidence having been not sufficient to establish that [Mother] had refused or failed to perform [her] parental duties, caused [Child] to be without essential parental care, that conditions having led to placement had continued to exist, or that any of above could not have been remedied[?]

3. Whether the [t]rial [c]ourt erred in [t]erminating [Mother's] [p]arental [r]ights under 23 Pa.C.S.A. section 2511(b), whether the evidence having been sufficient to establish termination of parental right would best serve the needs and welfare of the Child[?]

(Mother's Brief, at 5).

Our standard of review is as follows:

In an appeal from an order terminating parental rights, our scope of review is comprehensive: we consider all the evidence presented as well as the trial court's factual findings and legal conclusions. However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings. The trial judge's decision is entitled to the same deference as a jury verdict.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Further, we have stated:

Where the hearing court's findings are supported by competent evidence of record, we must affirm the hearing court even though the record could support an opposite result.

We are bound by the findings of the trial court which have adequate support in the record so long as the findings

- 8 -

do not evidence capricious disregard for competent and credible evidence. The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence. Though we are not bound by the trial court's inferences and deductions, we may reject its conclusions only if they involve errors of law or are clearly unreasonable in light of the trial court's sustainable findings.

*In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citations omitted).

We note our standard of review of a change of goal:

When we review a trial court's order to change the placement goal for a dependent child to adoption, our standard is abuse of discretion. In order to conclude that the trial court abused its discretion, we must determine that the court's judgment was manifestly unreasonable, that the court did not apply the law, or that the court's action was a result of partiality, prejudice, bias or ill will, as shown by the record. . . .

*In the Interest of S.G.*, 922 A.2d 943, 946 (Pa. Super. 2007) (citation omitted).[2]

The trial court terminated Mother's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), (8), and (b). In order to affirm the termination of parental rights, this Court need only agree with any one subsection of Section 2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa.

_____

[2] Mother has waived any challenge to the change of permanency goal to adoption by her failure to raise the issue in her concise statement and in the statement of questions involved portion of her brief. *See Krebs v. United Refining Co. of Pennsylvania*, 893 A.2d 776, 797 (Pa. Super. 2006). Notwithstanding her waiver, our review of the record reveals that the trial court did not abuse its discretion in changing the Child's goals to adoption, as adoption is clearly in his interests. *See S.G.*, *supra*. at 946.

Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004). Requests to have a natural parent's parental rights terminated are governed by 23 Pa.C.S.A. § 2511, which provides, in pertinent part:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

\* \* \*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. §§ 2511(a)(1), (b).

It is well settled that a party seeking termination of a parent's rights bears the burden of proving the grounds to so do by "clear and convincing evidence," a standard which requires evidence that is "so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." ***In re***

***T.F.***, 847 A.2d 738, 742 (Pa. Super. 2004) (citation and internal quotation marks omitted).  Further,

> A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship.  Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

***In the Interest of K.Z.S.***, 946 A.2d 753, 759 (Pa. Super. 2008) (citation omitted).

To terminate parental rights pursuant to section 2511(a)(1), the person or agency seeking termination must demonstrate through clear and convincing evidence "that for a period of at least six months prior to the filing of the petition, the parent's conduct demonstrates a[] settled purpose to relinquish parental rights or that the parent has refused or failed to perform parental duties." ***In re Adoption of M.E.P.***, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted).

With respect to subsection 2511(a)(1), our Supreme Court has held:

> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

***Matter of Adoption of Charles E.D.M., II***, 708 A.2d 88, 92 (Pa. 1998) (citation omitted).  Further,

the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004), *appeal denied*, 872 A.2d 1200 (Pa. 2005) (citations omitted).

The Adoption Act provides that a trial court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b). The Act does not make specific reference to an evaluation of the bond between parent and child but our case law requires the evaluation of any such bond. *See In re E.M.*, 620 A.2d 481, 484 (Pa. 1993). However, this Court has held that the trial court is not required by statute or precedent to order a formal bonding evaluation performed by an expert. *See In re K.K.R.-S.*, 958 A.2d 529, 533 (Pa. Super. 2008).

Here, in arguing that DHS did not present sufficient evidence to permit the trial court to terminate her parental rights pursuant to subsection (a)(1), Mother claims there is "little to confirm [her] having a settled purpose of relinquishing her parental claim." (Mother's Brief, at 13). Whether this is correct is immaterial, because our review of the evidence reveals that it is more than sufficient to support the conclusion that Mother has "refused or

failed to perform parental duties." ***M.E.P.***, ***supra*** at 1272 (citing 23 Pa. C.S.A. § 2511(a)(1)).

For example, Ms. Parker's testimony demonstrated that Mother denied and lacked an understanding of Child's documented developmental delays, special needs and mental health concerns. Further, the trial court had to intervene when Mother failed to sign authorizations for Child to receive needed treatment. Ms. Bruno's testimony revealed that Mother lacked an understanding of Child's needs and failed to attend all but two CCTC caretaker sessions that would have helped her to address them. At the sessions she did attend, Mother denied any responsibility for or role in the trauma Child suffered or its effects on him. Dr. Williams testified that Mother did not take responsibility for her role in Child's trauma and his subsequent removal from her care. According to Ms. Parker and Mr. Hayward, Mother cannot appropriately care for Child and termination of her parental rights and the goal of adoption is in Child's best interests.

Based on the foregoing, Mother's claim that there is insufficient evidence to terminate her parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1) is without merit.

Mother's whole argument regarding subsection (b) is this and no more:

> [Mother] would aver section 2511(b) to be a best interest standard exclusively. Thus, it is submitted, in the matter at hand, if [DHS] has not been been [sic] able to establish grounds for termination of parental rights under the provisions contained under section 2511(a); then section 2511(b) as a grounds for involuntary termination would not come into play.

(Mother's Brief, at 15).

Mother fails to develop a coherent argument to support her claim that there was insufficient evidence to support the termination of her rights pursuant to subsection (b) and she has, therefore waived that claim.[3]

That being said, our review of the record reveals that there is sufficient evidence to support the trial court's determination that the termination of Mother's parental rights is in Child's best interest.

According to Ms. Parker, Mother cannot appropriately care for Child and the termination of her parental rights is in Child's best interests.  Mr. Hayward also opined that adoption would be in Child's best interest.  In addition, Mother has had no contact with Child since he entered foster care and they do not share a parent-child bond.  Child does share a bond with his pre-adoptive foster mother, whom he views as his primary caregiver, and has made significant behavioral improvement in her home.  Her home is "the best fit for him."  (N.T. Hearing, 2/13/17, at 41).

---

[3] "The failure to develop an adequate argument in an appellate brief may [] result in waiver of the claim under Pa.R.A.P. 2119." *Commonwealth v. Beshore*, 916 A.2d 1128, 1140 (Pa. Super. 2007) (*en banc*), *appeal denied*, 982 A.2d 509 (Pa. 2007) (citation and internal quotation marks omitted). "[A]rguments which are not appropriately developed are waived.  Arguments not appropriately developed include those where the party has failed to cite any authority in support of a contention." *Lackner v. Glosser*, 892 A.2d 21, 29-30 (Pa. Super. 2006) (citations omitted).

Mother's claim that the trial court erred when it terminated her parental rights pursuant to 23 Pa.C.S.A. § 2511(b) is without merit.

Accordingly, we affirm the decree of the Court of Common Pleas of Philadelphia County, entered February 13, 2017, that involuntarily terminated Mother's parental rights and changed Child's goal to adoption.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/15/2017